McINTOSH BATTERY & OPTICAL CO. v. BIRTMAN et al.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1896.)

No. 311.

PATENTS—INVENTION—ELECTRICAL MACHINES.

The Atkinson patents, Nos. 275,347 and 331,754, for improvements in machines for generating static electricity, are void for want of invention.

Appeal from the Circuit Court of the United States for the Northern District of Illinois, Northern Division.

Wm. Zimmerman, for appellant.

H. H. M. Mathews, for appellees.

Before WOODS and JENKINS, Circuit Judges, and SEAMAN, District Judge.

WOODS, Circuit Judge. The appellant, the McIntosh Battery & Optical Company, sued the appellees, Charles F. Birtman, Jacob Nelson, and Felix Soeding, charging infringement of letters patent Nos. 275,347 and 331,754, issued on April 10, 1883, and December 8, 1885, respectively, to Philip Atkinson, of Chicago, Ill., for devices in combination constituting a machine for generating static electricity. The following are the claims of the patents:

No. 275,347: "(1) The combination, with a jar secured within a rigid cylinder or other receptacle, and provided with an interior coating, the whole constituting a Leyden jar, of a supporting-bed and devices connecting the rigid cylinder or receptacle with said bed, to secure the former in a stationary position, substantially as described. (2) The combination, with two jars, each secured within a rigid cylinder or receptacle which sustains its walls, and provided with an interior coating to form Leyden jars, of a supporting-bed, devices connecting the rigid cylinder or receptacle to the said bed, and an electrical connection between the Leyden jars, substantially as described. (3) The combination, with a jar secured within a rigid cylinder or receptacle which sustains its walls, and provided with an interior coating to form a Leyden jar, of a supporting-bed and a pin or screw passing through the bottom wall of the rigid cylinder or receptacle, and secured to the said bed, for attaching the Leyden jar in a fixed position, substantially as described. (4) The combination, with two jars interiorly lined and each secured within a rigid cylinder or receptacle, which sustains its walls to form Leyden jars, of a supporting-bed, a pin or screw passing through the bottom wall of each rigid cylinder or receptacle and secured to the said bed, and an electrical connection between the two jars, substantially as described. (5) The combination, with two interiorly-coated jars, each secured within a rigid cylinder or receptacle to form Leyden jars, of a supporting-bed, to which the rigid cylinders or receptacles are attached in fixed positions, an independent electrical conductor connecting with each jar and with the supporting-bed, and a movable switch interposed between the conductors and the jars, to establish and interrupt the current between the jars, substantially as described. (6) The combination, with two Leyden jars of the character described, each provided with an independent electrical conductor, of frictional devices for developing static electricity, having a connection with each jar, and a movable switch interposed between the said electrical conductors for establishing and interrupting the current between the jars, substantially as described. (7) The combination, with two interiorly-lined jars, each secured within a rigid cylinder or receptacle to form Leyden jars, a supporting-bed, and a pin or screw passing through the bottom wall of each jar, and secured to the said bed, of a wire extending from each pin or screw, and disconnected at their outer terminals, and a movable switch interposed between the said terminals, for establishing and interrupting the current between the jars, substantially as described. (8) The combination of two interiorly-lined jars, each secured within a rigid cylinder or receptacle to form Leyden jars, a supporting-bed, a pin or screw connecting the bottom wall of each rigid cylinder or receptacle to the said bed, a wire extending from each pin or screw, friction devices for developing static electricity, having a connection with both jars, and a movable switch interposed between the outer terminals of the said wires, for establishing and interrupting the current between the jars, substantially as described. (9) The combination of two Leyden jars, a bed to which they are secured, two independent electrical conductors, each connected at one end with each jar, the vertical posts or pins exposed at the upper side of the bed, and forming the terminals of the electrical conductors, the sockets or tubes secured to the bed, and connecting with the posts or

pins, and a movable switch interposed between the posts or pins, for establishing or interrupting the current between the jars, substantially as described. (10) The brackets or tubes, E, posts or pins, d, d', and switch, D, in combination with Leyden jars, and wires, c, for interrupting the electricity and transferring it, substantially as described. (11) The sockets or tubes, E, posts or pins, d, d', switch, D, and wires, c, in combination with the pins or screws, b, the lined jars secured in the metal cylinders or receptacles, B, to form Leyden jars, and means for developing static electricity, and conducting the same to the jars, substantially as described. (12) The combination, with the revolving plate or disk, H, of the attached rigid metal armatures, composed of disks, h, having the projecting central portions, h', substantially as and for the purpose described. (13) The combination, with the revolving disk, H, of the hub, K, having the openings, k, arranged in a horizontal plane, and the openings, K, arranged in a plane at or about an angle of forty-five degrees, and the comb-carrying rods secured in said openings, substantially as described, whereby two of the rods lie in the same horizontal plane, and the other two stand at an angle thereto, for the purposes set forth. (14) The plate, I, having holes near its periphery or edge, in combination with the rods, O, attached to the said plates by passing through the said holes, and friction devices for developing static electricity, whereby the latter is conducted through the plate by the said rods, substantially as described. (15) The perforated plate, I, having armatures, r, in combination with the rods, O, conductor, t, receiving-disk, s, and connecting strip, s', for passing the charge directly through the plate, and preventing loss by leakage or otherwise, substantially as described. (16) The conducting strips, t', terminating within the edge of the perforated plate, I, and connecting the brush-holders with the armatures for preventing wastage from leakage or otherwise, substantially as specified. (17) The plate, I, having holes near its periphery or edge, in combination with brush holders passing through such holes, armatures, r, disks, s, connecting-strips, s', and conductors, t, terminating within the edge or periphery of the plate, I, for securing the brushes to the plate and preventing wastage or loss by leakage or otherwise, substantially as specified."

No. 331,754: "(1) The hub, F, having a metallic core, F1, in combination with the arms, I, of non-conducting material, terminating in the hub, F, and the arms, G, of conducting material, terminating in the metallic core, F1, substantially as and for the purpose specified. (2) The arms, G, carrying a comb, in combination with the curved rods, H, and head, H1, carrying a comb for connecting two combs to run to a common point, and located and operated with distinct rotary disks, substantially as and for the purpose specified. (3) The rotary disks, A, A1, and stationary disks, B, B1, in combination with a double series of combs and brushes carried by rods, G, H, and a double series of combs carried by rods, J, K, and a double series of brushes carried by rods, L, to co-act with the respective disks, substantially as and for the purpose specified. (4) A hub, F, having a metal core, F1, arms, G, having connection with the metal core, and rods, I, terminating in the hub, F, in combination with the curved rods, H, having head, H1, the curved rods, K, having head, K1, substantially as and for the purpose specified. (5) In a Leyden jar, an interior coating, Q3, slotted at one end, and provided with a cross-support, Q4, for carrying the rod of a Leyden jar, and forming an interior lining for the jar, substantially as specified. (6) In a Leyden jar, the interior flexible support, Q3, having a support, Q4, in combination with a stopple, Q1, and rod, P, for giving the rod a firm support, substantially as specified."

The answer denied invention, and infringement, and alleged prior patents, prior publications, and prior use. The patentee, on cross-examination, testified as follows:

"Q. Do you know the machine called the 'Voss machine,' which I believe was exhibited in the Paris Exhibition in 1878? A. I don't know of any machine especially known as the 'Voss machine,' further than what I have already stated. Q. In your direct examination, you stated that the improvements claimed to be invented by you were improvements upon the

machines of Holtz, Toepler, and Voss. What improvement does your Exhibit A show upon the construction or invention exhibited in those three machines, respectively, or taken together? A. The improvements made by Voss on the Toepler-Holtz machines consists, substantially, in supporting the insulated combs shown here [indicating on Exhibit A] in a horizontal position by means of insulators supported on the shaft on which the plate revolves. The machine, when I first saw it, previous to taking out my patents, had combs supported in this manner, and brushes supported by brass lugs attached to the stationary plate of the machine. The lugs were cemented to the rear surface of the plate, and projected beyond the edge of the plate. I found on operating the machine that there was a considerable escape of electricity from the outer edges of these lugs, and conceived the idea of drilling holes through the plate itself and attaching the brushes to the plate by means of these holes, and also terminating the conductor leading from the brushes to the conductors, inside the margin of the plate, so as to leave an insulating surface between the edge or margin of the plate and the extremity of this conductor, so that the electric charge could pass directly through the plate to the inductor without allowing any escape as formerly by the lugs. I also found that the connection between the Leyden jars or condensers was made by a continuous wire under the bed of the machine, and that physicians desired to use the static current circulation between the outside coatings of the jars for medical purposes, and hence could not use that current sufficiently without some means of opening and closing the circuit between those outer coatings; hence I made the application of a switch in the circuit, between those outer coatings connecting the outer coatings of each jar with the terminals of the switch, so that by opening the switch the current could be conducted by sockets connected with those terminals through flexible conductors to a patient or a piece of apparatus connected with the terminals of those conductors. I also found that the diagonal uninsulated combs were supported on the shaft on which the plate revolves in such a way as to be moved to any required angle, and hence were often loose, and were liable to be set wrong, and to come in contact with the surface of the revolving plate. Hence, I conceived the idea of using a central disk of insulating material, to which those combs could be permanently attached at a fixed angle, and also the insulated combs attached to the same disk; the uninsulating combs being attached to a conductor at the center of this disk, while the insulators of the other pair of combs had no electrical connection with this conductor; so that a person not an expert could set up the machine without liability of mistake. I also found that the Leyden jars were coated inside and out with tinfoil, and rested loosely on plates connected underneath by the conductor aforementioned, and were liable to fall off or be knocked off the machines, and be broken; and I conceived the idea of using an outside coating of rigid material, which should be attached to the base of the machine to prevent the liability of the jars being knocked off. I also found that the disk or carriers cemented to the front surface of the revolving plate consisted of tinfoil, and that this tinfoil was liable to be scratched or marred by the brushes and combs, and the brass centers were liable to be knocked off and loosened by the combs. I therefore conceived the idea of making the carriers—both the center portion and the base—in one piece of rigid material, so as to furnish a broad supporting base for the carrier, and prevent the base being injured or marred like the tinfoil. The machines thus made under my first patent were made of two glass plates, one stationary and the other rotating; and I found similar machines made with several glass plates, some stationary and some rotating, but found there was no advantage gained by the addition of those other plates. I subsequently saw a machine of a different construction from the original one, which had four plates constructed in such a way as to make all the plates effective in generating electricity; and I conceived the idea of constructing a four-plate machine covered by my patent, in which the principle of this four-plate machine last referred to could be employed, and my second patent covers the point embraced in that four-plate machine. The four-plate machine referred to was a Holtz machine. Q. I will ask you if you are the original and first inventor of

placing the Leyden jar in a metallic cup from which it is removable? A. No, sir; that is an old invention. Q. Are you the original and first inventor of making or breaking an electrical current by the movement of a simple lever switch? A. No, sir. Q. Are you the original and first inventor of drilling holes in the stationary plates to which to attach the rods referred to in your testimony? A. As far as I know, I am. I never saw or heard of any machines before being constructed in that way. Q. Are you the first inventor of having a rod pass up through the stopper of the Leyden jar, the end terminating in the knob through which the discharging rod passes? A. No sir. Q. Are you the original and first inventor of having the interior coating of the Leyden jar a removable metallic cup? A. I am not; the invention is old; but I am the inventor of a certain application for such a coating to this machine. Q. Are you the inventor of the corks and metallic covering through which the rod before mentioned in the Leyden jar passes? A. No, sir. I did not invent the cork, but did invent the combination of the cork and insulating cover through which the rod passes. Q. Are you the original and first inventor of fastening the Leyden jar of a static electric machine to the bed of the machine? A. As far as I know, I am. I never saw it done before, and never heard of it being done before. Q. Do you remember whether the Voss machines, of which you have before spoken, had the Leyden jar loose or fastened to the bed of the machine? A. They were loose."

Other witnesses, expert and nonexpert, testified, and, besides, there was adduced a quantity of documentary proof consisting of prior patents and printed publications. A discussion of the evidence could be of little use or interest. It is enough to say that a careful study of it and of the briefs of counsel has confirmed the opinion produced by the oral argument that the patents in suit contain nothing entitled to be called invention. The decree dismissing the bill is therefore affirmed.